IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:25-CV-00499-KDB-DCK

| | |
|---|---|
| MOUHSINA MAYAR AND NAJIBULLAH MAYAR, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF STATE, <br><br> Defendant. | ORDER |

On June 4, 2025, the President of the United States issued Presidential Proclamation 10949 ("Proclamation"), which fully suspends the entry of nationals from Afghanistan and eleven other countries as immigrants and nonimmigrants, subject to the exceptions and case-by-case waivers described in the Proclamation. *See* 90 Fed. Reg. 24497-505. In this action, Plaintiffs seek to prevent the enforcement of that Proclamation to the extent it will bar three of their immediate family members – who are Afghan nationals – from obtaining F22 immigrant visas to come to the United States, following an immigration interview scheduled for August 12, 2025, at the U.S. Embassy in Kigali, Rwanda.

Now before the Court for expedited consideration are Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction and Motion to Expedite (Doc. Nos. 2, 18) and Defendant's Motions to Dismiss and Amended Motion to Strike (Doc. Nos. 6, 10). After careful consideration of all these motions, the Court finds that, while Plaintiffs have standing to assert their claims, they cannot establish a likelihood of success on the merits based on the decision of the Supreme Court in *Trump v. Hawaii*, 585 U.S. 667 (2018) (permitting enforcement of a similar

1

travel and immigration ban based on nationality). Therefore, Plaintiffs' request for temporary and preliminary injunctive relief will be denied.

## I. LEGAL STANDARD

A temporary restraining order ("TRO") or preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief" and may never be awarded "as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 24, 32 (2008). Similarly, the Fourth Circuit has recognized that the grant of such a remedy involves "the exercise of a very far-reaching power, which is to be applied only in [the] limited circumstances which clearly demand it," *Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184, 188 (4th Cir. 2013) (*en banc*), particularly with respect to postponement of the actions of an agency of the executive branch. *See CASA, Inc. v. Noem*, No. 25-1792, 2025 WL 2028397, at *1 (4th Cir. July 21, 2025).

The test for entering an injunction prior to a final decision on the merits is well-established. *See 2311 Racing LLC v. Nat'l Ass'n for Stock Car Auto Racing, LLC*, 139 F.4th 404, 408 (4th Cir. 2025). A plaintiff must show that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm without the preliminary injunction; (3) the balance of equities tips in his favor; and (4) the injunction is in the public interest. *Winter*, 555 U.S. at 20; *see also 2311 Racing,* 139 F.4th at 408 (Plaintiff must make a clear showing that it "is *likely* to succeed on the merits — along with the risk of irreparable harm, the balance of equities, and the public interest." (emphasis in original). Each of these four requirements must be satisfied. *Id.* The standard is "heightened" where Plaintiffs are seeking a "mandatory" injunction; that is, one in which the Court orders that a party do some act rather than only refrain from taking action that alters the status quo. *2311 Racing*, 139 F. 4th at 408-09, 411.

2

As to Defendant's Motion to Dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), it is the plaintiff's burden to show that subject matter jurisdiction exists. *See Evans v. B.F. Perkins Co., Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999); *CASA, Inc. v. Noem*, No. CV 25-1484-TDC, 2025 WL 1907378, at *6 (D. Md. July 10, 2025). Rule 12(b)(1) allows a defendant to move for dismissal when it believes that the plaintiff has failed to make that showing. When a defendant asserts that the plaintiff has failed to allege facts sufficient to establish subject matter jurisdiction, the allegations in the complaint are assumed to be true under the same standard as in a Rule 12(b)(6) motion, and "the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

## II.    FACTS AND PROCEDURAL HISTORY

Plaintiffs Mouhsina Mayar (Mother) and Najibullah Mayar (Son) fled Afghanistan due to Taliban persecution, and thereafter obtained lawful permanent residency or citizenship in the United States. Ms. Mayar's children Tamana Mayar, Heela Mayar, and Abdullah Mayar, all Afghan nationals, have filed F22 visa applications ("child of lawful permanent resident") seeking to immigrate. Due to the closure of the U.S. Embassy in Kabul, Afghanistan, their case was transferred to the U.S. Embassy in Kigali, Rwanda, where they are scheduled for interviews on August 12, 2025. *See* Doc. No. 1.

On January 20, 2025, stating his authority under 8 U.S.C. §§ 1182(f) and 1185(a), President Trump issued an Executive Order titled "Protecting the United States from Foreign Terrorists and Other National Security and Public Safety Threats." 90 Fed. Reg. 8451-53 (Jan. 30, 2025). The Executive Order states that "[i]t is the policy of the United States to protect its citizens from aliens who intend to commit terrorist attacks, threaten our national security, espouse hateful ideology, or

3

otherwise exploit the immigration laws for malevolent purposes." *Id*. § 1(a). It directs the Secretary of State, the Attorney General, the Secretary of Homeland Security, and the Director of National Intelligence to submit a joint report within sixty days (1) "identifying countries throughout the world for which vetting and screening information is so deficient as to warrant a partial or full suspension on the admission of nationals from those countries pursuant to [8 U.S.C. § 1182(f)]"; and (2) "identifying how many nationals from those countries have entered or have been admitted into the United States on or since January 20, 2021, and any other information the Secretaries and Attorney General deem relevant to the actions or activities of such nationals since their admission or entry to the United States." *Id*. § 2(b)(i)-(ii).

On June 4, 2025, after receiving the report and recommendation, the President issued Presidential Proclamation 10949. *See* 90 Fed. Reg. 24497-505 (June 10, 2025). The Proclamation fully suspends and limits the entry of nationals from twelve countries that the President found to be deficient with regards to screening and vetting and therefore pose a very high risk to the United States: Afghanistan, Burma, Chad, Republic of the Congo, Equatorial Guinea, Eritrea, Haiti, Iran, Libya, Somalia, Sudan, and Yemen. Proclamation, § 2. The Proclamation also partially suspends and limits the entry of nationals from seven countries who he determined pose a high level of risk to the United States: Burundi, Cuba, Laos, Sierra Leone, Togo, Turkmenistan, and Venezuela. Proclamation, § 3.

While Plaintiffs have submitted a waiver request under Section 3(c) of the Proclamation, Doc. No. 1, they believe that without judicial intervention, their family members' visa applications will be denied solely due to their Afghan nationality pursuant to the Proclamation. *See* Doc. No. 2 at 2. On July 10, 2025, they filed this action, *pro se*, against the United States Department of State ("State Department"), along with a Motion seeking a TRO and Preliminary Injunction. Doc Nos.
4

1, 2. The Complaint claims that the Proclamation violates "the Administrative Procedure Act (Arbitrary and Capricious)," "Equal Protection (Fifth Amendment)" and "Procedural Due Process." Doc. No. 1. Further, Plaintiffs request that the Court declare the application of the Proclamation to Plaintiffs' family to be unlawful and compel the State Department to process and issue the visas, as well as "issue a Temporary Restraining Order and Preliminary Injunction barring denial of the F22 immigrant visas." Doc. No. 1 at 2. The actual injunction Motion seeks more limited relief, asking the Court to enter a TRO preventing the denial of the requested F22 immigrant visas and a Preliminary Injunction requiring Defendant to adjudicate the visa applications without regard to the Proclamation. Doc. No. 2. Subsequently, Plaintiffs filed a Motion to Expedite, asking that the Court decide their motion in advance of the visa interview date. Doc. No. 18.[1]

In response, the State Department filed a Motion to Dismiss for Lack of Jurisdiction, arguing that the Court lacks subject matter jurisdiction over this action because Plaintiffs do not have standing to challenge "unreviewable executive action" which has not yet occurred (i.e. the visa applications have not yet been denied). Doc. No. 6. Finally, Defendant also filed a Motion to Strike and Amended Motion to Strike, asking the Court to strike Plaintiffs' injunction motion (Doc. No. 2) because the *Pro Se* Plaintiffs failed to include a certification related to the use of artificial intelligence. Doc. Nos. 8, 10. Notwithstanding Plaintiffs' response that they were unaware of the requirement as non-lawyers and the inclusion of a Certification describing their use of "artificial intelligence" only for translation, Doc. Nos. 13, 17, Defendant has continued to pursue the Motion to Strike (although foregoing a Reply).

---

[1] While this motion will formally be denied as moot, the Court has in effect granted the motion by issuing this ruling in advance of the scheduled visa interviews as requested by the Plaintiffs.

All the motions have been fully briefed and are ripe to be decided.

### III. DISCUSSION

*Trump v. Hawaii* controls the Court's ruling both as to Plaintiffs' standing and the merits of their requests for temporary and preliminary injunctive relief. In that case, the Supreme Court considered the President's appeal of a Preliminary Injunction entered by a District Court prohibiting implementation and enforcement of Presidential Proclamation 9645, which, like the Proclamation challenged here, indefinitely barred entry by nationals from a number of foreign countries based on the President's asserted authority to use section 212(f) of the Immigration and Nationality Act, 8 U.S.C. § 1182(f) ("INA"), to protect the United States through entry restrictions. *Hawaii*, 585 U.S. 667 (2018). Assuming without deciding that the plaintiffs' claims were reviewable, the Supreme Court first held that the individual plaintiffs had Article III standing to challenge the exclusion of their relatives, finding that a person's interest in being united with his relatives is sufficiently concrete and particularized to form the basis of an Article III injury in fact. *Id.* at 697-99.

However, the Court went on to decide that the plaintiffs had not demonstrated a likelihood of success on the merits of their claims, holding that "the admission and exclusion of foreign nationals is a 'fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'" *Id*. at 702 (quoting *Fiallo v. Bell,* 430 U.S. 787 (1977)). Given this deferential foundation, the Court applied "rational basis" review to the Proclamation, asking only "whether the Executive gives a 'facially legitimate and bona fide' reason for its action," *Id*. at 703 (quoting *Kleindienst v. Mandel,* 408 U.S. 753 (1972). Finding that the claimed premise of the proclamation – "preventing entry of nationals who cannot be adequately vetted and inducing other nations to improve their practices" – was a "legitimate purpose," the

6

Court concluded: "the Government has set forth a sufficient national security justification to survive rational basis review. We express no view on the soundness of the policy. We simply hold today that plaintiffs have not demonstrated a likelihood of success on the merits of their constitutional claim." *Id*. at 706, 710. The Court then reversed the grant of the preliminary injunction as an abuse of discretion.

A. STANDING

Because the Court always has an obligation to assure that it has jurisdiction under Article III, the first question that must be answered is whether plaintiffs have standing to challenge the Proclamation. *See Hawaii*, 568 U.S. at 697. As explained in *Trump v. Hawaii*:[2]

> Federal courts have authority under the Constitution to decide legal questions only in the course of resolving "Cases" or "Controversies." Art. III, § 2. One of the essential elements of a legal case or controversy is that the plaintiff have standing to sue. Standing requires more than just a "keen interest in the issue." *Hollingsworth v. Perry,* 570 U.S. 693, 700, 133 S.Ct. 2652, 186 L.Ed.2d 768 (2013). It requires allegations—and, eventually, proof—that the plaintiff "personal[ly]" suffered a concrete and particularized injury in connection with the conduct about which he complains. *Spokeo, Inc. v. Robins,* 578 U.S. 330, 339, 136 S.Ct. 1540, 1547–1548, 194 L.Ed.2d 635 (2016).

*Id*. at 697-98. Noting the potential issue arising from the fact that "the entry restrictions apply not to plaintiffs themselves but to others seeking to enter the United States," the Supreme Court nevertheless held that the "alleged real-world effect that the Proclamation has had in keeping [the individual plaintiffs] separated from certain relatives who seek to enter the country" suffices as a sufficiently "concrete injury" to support standing. *Id*. at 698 ("We agree that a person's interest in being united with his relatives is sufficiently concrete and particularized to form the basis of an Article III injury in fact."); *see also International Refugee Assistance Project* (*IRAP*) *v. Trump,*

---

[2] The Court notes that the Government failed to mention, much less attempt to distinguish, the Supreme Court's discussion of standing in *Trump v. Hawaii*, which it otherwise cites as controlling authority.
7

582 U.S. 571, 583 (2017) (an American individual who has "a bona fide relationship with a particular person seeking to enter the country ... can legitimately claim concrete hardship if that person is excluded.").

Plaintiffs have alleged the same "concrete injury" here; that is, the denial of their children's (or brother's and sisters') right to come to or immigrate to the United States on the same basis as non-Afghans, thereby keeping them separated from their loved ones. The State Department contends that despite having the same relationships and injury as the individual plaintiffs in *Trump v. Hawaii*, Plaintiffs lack standing here because the denial of their visas has not yet been finalized. The Court disagrees for two reasons. First, although the Government does not in any way challenge the application of the full Afghan entry restriction to the Mayar children, it raises the possibility – without any evidence – that they might be excluded for some other reason. As discussed above, in ruling on a 12(b)(1) motion, the Court must use the 12(b)(6) standard of review, in which Plaintiffs' allegations are taken as true. Here, Plaintiffs allege that in the absence of the Proclamation, their relatives are entitled to a F22 visa. Therefore, the Court is required to accept that allegation, not Defendant's speculation otherwise, in considering the consequences of allowing the Government to apply the Proclamation to the visa applications.

Second, Plaintiffs' Preliminary Injunction motion (unlike the Complaint itself) does not seek an order requiring that the visas be issued; rather, it simply asks the Court to preclude the State Department from using the Proclamation in the consideration of the visa application (in other words, to consider the visa requests as if Plaintiffs' family members were not from one of the restricted countries). Therefore, if the Court were to grant the preliminary injunction (which it does not for the reasons discussed below), the State Department would not be prohibited from denying the Mayar visa applications for reasons other than the Proclamation. Accordingly, Plaintiffs have

established standing and subject matter jurisdiction (based on the federal questions raised) sufficient to proceed with their claims. The State Department's Motion to Dismiss will be denied.

B. **MERITS OF PLAINTIFFS' INJUNCTION REQUESTS**

As discussed above, although the Court concludes that Plaintiffs have standing to pursue their claims, the Court also finds that they cannot satisfy the high standard for entry of a TRO or Preliminary Injunction. Specifically, they have failed to show a likelihood of success on the merits under the authority of *Trump v. Hawaii*. The Court will not belabor the analysis. Simply put, there is no legal daylight between the presidential proclamation challenged in *Trump v. Hawaii* and the one in dispute here. While the lineup of foreign countries may be somewhat different, the rationale for the proclamation, the process for determining which countries would be chosen and the practical effects on nationals from the listed countries (and their relatives) is the same.[3] In sum, the President has no less authority to restrict the entry of nationals from Afghanistan[4] based on his determination that the country – still ruled by the Taliban (a Specially Designated Global Terrorist Group) – does not have appropriate screening and vetting procedures than he did with respect to Syria or the other countries involved in the earlier proclamation. (Indeed, several countries appear

---

[3] Plaintiffs suggest that the two proclamations differ in that the earlier proclamation contained broader opportunities for individuals to obtain waivers of the entry restrictions. While this is true, the Proclamation challenged here does contain both individual and categorical waiver provisions and, more importantly, the Supreme Court did not rest its ruling in *Trump v. Hawaii* on the presence of particular waiver provisions (instead it references the waiver opportunities – in addition to other items – as a rejoinder to the argument that the proclamation reflected a clear anti-Muslim religious animus).

[4] To be clear, in making this ruling, the Court (as did the Supreme Court in *Trump v. Hawaii*) expresses no opinion as to the soundness of this policy. Many brave Afghans supported the United States in its efforts to promote democracy and fight the Taliban and allowing those individuals and their families to seek refuge in our country is consistent with the best traditions of supporting our allies and "leaving no soldier behind." However, the ultimate balancing of those principles with the ongoing security of the country (both individually and collectively) is left to the executive rather than the judicial branch of our government, in the absence of clearly unlawful or unconstitutional conduct, which the Supreme Court has ruled is not present here.

in both proclamations, including Yemen, Somalia and Chad). Accordingly, the Court must hold that Plaintiffs have failed to show a likelihood of success on their claims that the Proclamation is unlawful or unconstitutional, which in turn means that the Court must deny their motion for temporary and preliminary injunctive relief.[5] Nevertheless, the Court fully expects that the State Department will carefully consider the visa applications of Plaintiffs' family members, including their waiver applications, in accordance with the applicable law and the equities of their particular circumstances.

Finally, the Court will deny the State Department's Motion to Strike. The Court's requirement that litigants certify that they have not improperly used "artificial intelligence" in preparing their legal memoranda is intended to be a shield to protect the Court from fictitious and erroneous legal citations and other problems that may arise through the use of generative artificial intelligence. It is not meant to be used as a sword to strike the otherwise valid submissions of *pro se* plaintiffs who are unfamiliar with the rule (not to mention the English language in this instance) and rectify the oversight when it is brought to their attention.[6] Plaintiffs have now certified that their use of "artificial intelligence" was limited to translation programs, which – even if they could

---

[5] Having decided that Plaintiffs cannot establish a likelihood of success on the merits, the Court need not reach the remaining issues of irreparable harm, balancing of the equities or the public interest. *See Winter*, 555 U.S. at 20 (holding a plaintiff must establish all four elements necessary to support entry of a TRO or preliminary injunction). However, the Court does not question Plaintiffs' sincere belief that their family members would be proper and productive immigrants or that they would likely suffer irreparable harm if they were returned to Afghanistan, where there are limited rights and opportunities and profound risks for girls/women (and anyone who opposes the Taliban rulers).

[6] While the government is correct that Local Rule 7.1(b) did not *require* consultation with Plaintiffs prior to filing its Motion to Strike because Plaintiffs are unrepresented, the rule does not *prohibit* such consultation. A modicum of common sense (if not common decency) would have counseled that the government raise the issue with the Plaintiffs in advance of bringing this issue to the Court. Further, once Plaintiffs responded to the motion and explained their reasonable use of "artificial intelligence," the government could well have employed the same common sense to withdraw its motion rather than obligating the Court to issue this ruling.

be considered within the rule – plainly do not justify striking their motion seeking temporary and preliminary injunctive relief. Therefore, the Motion to Strike will be denied.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (Doc. No. 2) is **DENIED;**

2. Plaintiffs' Motion to Expedite (Doc. No. 18) is **DENIED** as moot;

3. Defendant's Motion to Dismiss (Doc. No. 6) is **DENIED**;

4. Defendant's Motion to Strike (Doc. No. 8) is **DENIED** as moot; and

5. Defendant's Amended Motion to Strike (Doc. No. 10) is **DENIED.**

**SO ORDERED ADJUDGED AND DECREED**.

Signed: August 6, 2025

Kenneth D. Bell
United States District Judge